■ SANDERS A. KAHN ASSOCIATES, INC., Respondent, v. IRVING MAIDMAN, Appellant.— Judgment, Supreme Court, New York County, entered on June 29, 1971, affirmed on the opinion of Fein, J., at Trial Term [69 Misc 2d 90]. Respondent shall recover of appellant $50 costs and disbursements of this appeal. Concur — Nunez, Murphy and Capozzoli, JJ.; McGivern, J. P., dissents in a memorandum and Kupferman, J., concurs in McGivern, J. P.'s dissent in a separate memorandum, as follows: McGivern, J. P. (dissenting). I disagree. In my view, contrary to that as expressed by the learned Justice at Trial Term, all the essential terms had not been agreed upon, and the commissions had not been earned. Thus, I cannot agree with Trial Term that "Here it is undisputed that all of the parties were in complete agreement as to all of the financial terms". There was no meeting of the minds as to the precise terms of the mortgage, the annual payments, the allocation of interest, the acceptance of tenancies, and the customary items of a large real estate transaction. And the Court of Appeals recently said in a case involving a broker "'with terms to be arranged'": "Where an owner merely specifies the purchase price of property, without fixing the other terms of sale, commissions are not earned until and unless the person produced by the broker reaches an agreement with the owner not only as to price but also as to the terms upon which the sale is to be made." (*Kaelin* v. *Warner,* 27 N Y 2d 352, 355, Fuld, Ch. J.) In this case, it was plaintiff broker who approached the defendant owner. But he neither asked for a particular time, wherein to seek a purchaser, nor did he ask for an exclusive brokerage. He may have been on the threshold of success; or maybe he only thought he was, because before the terms were consummated, the attorney for the prospective purchaser wrote: "There are, of course, a number of provisions which raise serious questions and I must discuss these with our client". And, before there was a meeting of the minds, the owner terminated the relationship. He was within his rights. He gave the broker no unlimited time within which to operate. He did not renegotiate the deal with the prospective purchaser and reap where he did not sow. Nor did he usurp the knowledge and efforts of the broker and sell to another purchaser at a better price. From motives of enlightened self-interest, he may have changed his mind and decided to do something else with his own property, as the record suggests. But this does not cast him in damages. (*Sibbald* v. *Bethlehem Iron Co.,* 83 N. Y. 378.) And on the papers before us, there is no conclusive proof that the plaintiff, with some certainty, would have completed the transaction, but for the defendant's conduct. (Cf. *Mandeville, Inc.* v. *Zah,* 38 A D 2d 730.)

Kupferman, J. (dissenting). I concur in the dissenting opinion of Justice McGivern. However, in view of my joining in the majority opinion in *Carnegie* v. *Abrams* (37 A D 2d 327) (in which Justice McGivern dissented), I believe a further explanation is warranted. The real estate agency relationship between the broker plaintiff and the seller defendant in both the *Carnegie* case and this one was similar. However, my point of departure is that in the *Carnegie* case the difference between the buyer and seller was only with respect to the amount of interest on the mortgage and the amortization, where the seller had told the agent previously that it should be "the going rate", and where the buyer was amenable but was unable to ascertain what terms the seller desired. Here, the buyer's attorney on receipt of a contract prepared by the seller stated "There are, of course, a number of provisions which raise serious questions and I must discuss them with our client." There is only speculation as to what these serious questions were, being possibly an existing tenancy and whether interest was included in or in addition to the principal payments on the existing mortgage. The defendant seller maintained that the contract was "subject to immediate acceptance" and called off the deal, while the attorney for the buyer asked for a meeting with seller's counsel "to discuss with you personally several other clauses in the contract." While the buyer was "able", it was not "ready and willing" on the contract submitted or on known easily solved differences. Accordingly, the broker's cause must fail.