ROTHMAN REALTY CORP., PLAINTIFF-RESPONDENT, v. BARTON BERECK AND DEBRA BERECK, DEFENDANTS-APPELLANTS.

Argued April 4, 1977—Decided July 7, 1977.

592

594

*Mr. Jeffrey M. Kossak,* a member of the New York bar, argued the cause for appellants (*Messrs. Rosenblum and Rosenblum,* attorneys; *Mr. Edward G. Rosenblum* on the brief).

*Mr. Leonard Rothman* argued the cause for respondent.

The opinion of the court was delivered by

SCHREIBER, J. Rothman Realty Corp., a licensed real estate broker, sued the contract purchasers of a home, Barton and Debra Bereck, husband and wife, to recover dam-

ages due to loss of a real estate commission when the buyers refused to consummate the transaction. The trial court, sitting without a jury, entered a judgment for the defendants. The Appellate Division reversed and remanded for the entry of judgment in the amount of $5400 (the amount of the lost commission) plus interest. 140 *N. J. Super.* 72 (1976). We granted the defendants' petition for certification. 71 *N. J.* 519 (1976).

In December 1971, the defendants sought the assistance of the plaintiff realtor in locating a suitable home. The plaintiff's efforts were successful and on February 21, 1972, Barton and Debra Bereck entered into an agreement prepared by the plaintiff broker. The contract which was on a form supplied by the plaintiff was with John Lombardo and Benedetta Lombardo, husband and wife, and covered the purchase of a home then under construction at 76 Alpine Court, Demarest, New Jersey. The contract recited that the sellers "recognize[d] Rothman Realty Corp. as the agent negotiating this agreement and [agreed] to pay said agent for services rendered for consummating this sale, an earned commission of four (4)% of the total sales price, same to be due and payable upon closing of title, to be paid out of the proceeds of the sale."

The defendants deposited $14,000 with the broker which was subsequently transferred to the sellers. These funds were to be credited against the purchase price of $135,000. The $121,000 balance was to be satisfied from two sources. The plaintiff broker was to arrange for the procurement of a 30 year purchase money mortgage of $60,000 and the defendants were to produce additional equity in the amount of $61,000. The plaintiff prepared a mortgage loan application, which required information concerning the defendants' financial status. It was obvious from the financial statement that the $61,000 had to be derived from liquidation of assets such as stock.

The plaintiff obtained the necessary mortgage commitment from the Fort Lee Savings and Loan Association on

April 15, 1972. The defendants, contemplating the acquisition of their new home, paid for and installed an alarm system, paid for certain carpentry and landscaping, and hired an interior decorator. The sellers, by letter dated April 10, 1972, attempted to fix May 1 as a closing date. The closing was postponed when the seller, John Lombardo, fell ill and had to be hospitalized. In a letter dated May 2, 1972, the attorney for the seller made. time of the essence in setting May 16, 1972 as the closing date.

It was shortly thereafter that a financial calamity occurred. Mr. Bereck's primary asset consisted of approximately 5600 shares of common stock of Faraday Lab, a security which traded on the New York over-the-counter market. He had contemplated selling some of that stock to meet the balance of the cash requirements due at the closing. On Friday, May 5, 1972, news which had serious adverse consequences upon the Faraday Lab stock appeared in Barron's, a financial newspaper. On Monday, May 8, 1972, the stock abruptly dropped 16 points from 25 to 9 and the market value of Bereck's shares depreciated in value from $135,000 to $50,400, an amount substantially less than the $61,000 needed to close.

On May 16, 1972, Mr. Bereck and his attorney appeared at the time and place set for the closing. The buyers bared their financial plight, explaining that it was economically impossible to finalize the transaction. The parties agreed that, if the Berecks' financial status changed and if the transaction were reinstated, the deposit, less carrying charges of the sellers, would be credited toward the purchase price. The defendants' attorney wrote the sellers on May 22, 1972:

It was also discussed that if Mr. Bereck re-established a relationship with you, that after giving him credit for a deposit, you would also honor your agreement to pay a commission to Mr. Rothman as broker.

Mr. Bereck has advised me that he is truly sorry that he cannot close title to the premises because of financial circumstances and for reasons beyond his control which reached such a point that he could not continue with this transaction.

At the same time the defendants' attorney wrote to the plaintiff broker:

On behalf of Mr. and Mrs. Barton Bereck, we wish to advise you that there is no responsibility to you for any commission since our clients' failure to complete the closing was because of economic circumstances totally beyond their control.

Although the theory of the complaint and the pretrial order reflected only a cause of action predicated on tortious interference with contractual rights, at the opening of the trial plaintiff's counsel indicated that he was also proceeding under the theory of breach of an implied contract between the plaintiff and the defendants. The trial court correctly commented that the cause of action had been framed on the tortious interference principle, but that it would not preclude the plaintiff from adducing proofs relevant to the implied contract theory.

At the conclusion of the trial the trial court found that the buyers had intended to buy the house, incurred additional expenses in addition to the deposit, and otherwise acted in good faith, but were financially unable to complete the transaction because of the unexpected sharp decrease in the value of the Faraday Lab stock. He concluded that there was no showing of any intent to commit a wrongful act which would interfere with the broker's legitimate right to the commission. He also held that any implied agreement between the broker and the purchasers was subject to the condition that the purchasers would not be responsible where in good faith they do not complete the transaction.

The Appellate Division reversed. It based its decision on language in *Ellsworth Dobbs, Inc. v. Johnson,* 50 *N. J.* 528 (1967), stating that if the buyer "fails or refuses" to complete the transaction "without valid reason, and thus prevents the broker from earning the commission from the owner, he becomes liable to the broker for breach of the implied promise [to complete the transaction]." 50 *N. J.* at 559. It construed this to mean that the buyer must have

a legally sufficient basis to justify nonperformance of the buyer's contract with the seller. Finding that the express contract for the purchase of the property did not justify nonperformance because of the buyers' financial inability, the Appellate Division held the defendants were responsible to the broker for damages in an amount equal to the commission of $5400.

I

The plaintiff's complaint consisted of five counts which may be summarized as charging that the defendants, by wilfully breaching their agreement with the sellers, deprived the plaintiff of its economic right to earn a commission and tortiously interfered with the plaintiff's contract right to earn that commission. The pretrial order stated that the only issue and the nature of the action was one involving tortious interference with contractual rights.

At the outset of the trial, the plaintiff claimed that he was also proceeding on the basis of an implied contract between the plaintiff-broker and the defendants-buyers. The trial court properly pointed out that that theory was not asserted in the pretrial order. Nor was it set forth in the plaintiff's legal contentions submitted at the pretrial conference.

Parties are normally limited to the issues raised in the pretrial order or in the pleadings, *Jardine Estates v. Koppel*, 24 *N. J.* 536, 542 (1957), and a trial court may properly preclude establishment of an added starter at or during the trial. *Medivox Productions, Inc. v. Hoffmann-LaRoche, Inc.*, 107 *N. J. Super.* 47, 74 (Law Div. 1969). *See Royal Store Fixture Co. v. New Jersey Butler Co.*, 114 *N. J. Super.* 263, 269 (App. Div. 1971). Pretrial conference proceedings should not be taken lightly. Counsel's cavalier treatment of a pretrial conference memorandum and of the conference may adversely affect the client's cause of action or defense. The purpose and wisdom of pretrial conferences may not be gainsaid in appropriate cases. It is a time when

the parties should be prepared to state their factual and legal contentions so that each is fully aware of the contested legal issues and will be prepared at trial to submit relevant evidence with respect to those issues.

At one point in the colloquy with the court, plaintiff's counsel requested an amendment of the pretrial order, but by the conclusion of the discussion he agreed that the plaintiff's claim was only based on tortious interference. At that time the trial court said it would permit the plaintiff to adduce whatever relevant proofs it desired with respect to the implied contract theory. Our examination of the record discloses that no evidence was rejected which was relevant or material to the implied agreement between the parties. As noted above, the trial court ultimately concluded that the buyer had a valid reason which precluded liability. We find no error in the trial court's ruling with respect to the pretrial order since the plaintiff did not offer any factual contentions in addition to those previously set forth and, in any event, if there were error, it was harmless in view of our holding herein.

## II

The contractual relationship between the real estate broker and the owner-seller is distinct from that which may exist between the real estate broker and the purchaser. Usually the owner engages a broker or brokers to sell the premises. Brokerage agreements are often executed when these listings are made which formalize the terms of the relationship. The broker is deemed to be the seller's agent. It is well established that as a fiduciary in this relationship, the broker has a duty to act in good faith on behalf of the seller. *Thompson Realty Co. v. Hoagland,* 100 *N. J. Super.* 478 (App. Div. 1968); *Brown v. Coates,* 253 *F.* 2d 36 (D. C. Cir. 1958).

In *Ellsworth Dobbs, Inc. v. Johnson,* 50 *N. J.* 528 (1967), this Court in a comprehensive opinion held that an owner

was not responsible to an authorized broker for a commission when the broker produced a willing and able purchaser who entered into a purchase contract. Liability for the commission only accrued when the transaction was completed. Focusing upon the burden of inquiring or investigating into the financial capability of the prospective buyer, we concluded in *Ellsworth Dobbs* "that the obligation to inquire into the prospect's [buyer's] financial status and to establish his adequacy to fulfill the monetary conditions of the purchase must be regarded logically and sensibly as resting with the broker." *Id.* at 548. We also resolved that if the buyer proved to be financially incapable of closing the seller could not be held for the commission and that this risk should be borne by the broker. *Id.* at 552.

A broker may also become the agent of a prospective purchaser. Where the expectant vendee engages a broker to locate suitable premises and enters into a contract of purchase for that property, and he knows the broker will earn a commission to be paid by the seller, the buyer impliedly agrees that he will complete the transaction so that the broker will be paid for his services. That implied promise may also be subject to an express or implied condition that the buyer will have available at the closing the necessary financial resources to complete the purchase. *Ellsworth Dobbs, Inc. v. Johnson,* 50 *N. J.* at 561–562. Furthermore, the broker and the buyer may have entered into an express agreement prescribing all the terms and conditions of the employment. *See Brittain v. Russell,* 78 *Ga. App.* 719, 52 *S. E.* 2d 38 (1949); *Trieper v. Bulkley & Horton Co.,* 119 *Misc.* 597, 197 *N. Y. S.* 88 (Sup. Ct. 1922). In this event it is conceivable that the buyer may be liable to the seller for refusal to perform the purchase contract and not be responsible to the broker. In determining the buyer's liability to the broker, it is necessary to examine both agreements. Has the buyer breached his contract with the seller? Has the buyer breached the agreement with the broker? It is only when the buyer fails or refuses to comply with both

agreements, the express contract to purchase the land and the agreement with the broker to complete the transaction, *without a valid reason for either,* that he becomes liable to the broker for breach of the implied promise. *Barbetta v. Sciaraffa,* 135 *N. J. Super.* 488 (App. Div. 1975).

The nature of the relationship between the broker and the buyer should be considered in light of all the circumstances. In most cases where individuals are seeking to purchase homes, the members of the public are engaging realtors who, licensed by the State, *N. J. S. A.* 45:15–1, have superior expertise and knowledge with respect to financing acquisitions. They, practically speaking, dominate the market, so that would-be home owners must seek their services. *See Note, "Ellsworth Dobbs, Inc. v. Johnson*: A Reexamination of the Broker-Buyer-Seller Relationship in New Jersey," 23 *Rut. L. Rev.* 83, 102 (1968). To imply an obligation on the part of a buyer that he will pay the broker a commission, even though the buyer has acted in good faith with every intendment of acquiring the premises, but is unavoidably through no fault of his own prevented from consummating the purchase, is unquestionably contrary to the buyer's expectable understanding when he engages the broker.

In a sense there has been no wrongdoing or default by the buyer. *Compare,* for example, *Apfelbaum v. Topf,* 104 *N. J. L.* 343 (E. & A. 1928), where a seller, unable to convey marketable title because of a restrictive covenant with respect to the use of the land of which the owner was unaware, was not held liable to pay the brokerage commission. The commission agreement called for payment unless title did not close for a reason not due to the seller's default. The court reasoned that the word "default" reasonably read referred only to some willful act of the seller which defeated the passing of title. In *Ellsworth Dobbs* we referred to the seller's obligation to the broker where title "does not pass because of the owner's improper or frustrating conduct." 50 *N. J.* at 548. These cases recognize that liability should not be imposed on the seller where he acts in good

faith and his inability to perform is not related to any wrongful act or misconduct on his part. To the same effect see *Blau v. Friedman*, 26 *N. J.* 397 (1958); *Alexander Summer Co. v. Weil*, 16 *N. J. Super.* 94 (App. Div. 1951).

The same rule should equitably be applied to the buyer. It must be remembered that the buyer has not entered into any written or formal agreement with the broker, but that the promise between the broker and the buyer has been implied by law. In these circumstances the "risk of such inability at that crucial time [the closing] must be treated as a normal incident of the brokerage business." *Ellsworth Dobbs, Inc. v. Johnson*, 50 *N. J.* at 552.

We held in *Ellsworth Dobbs* that the buyer's inability to obtain the necessary financing was not a defense to the broker's action unless the financial ability contingency was a term, express or implied, in the agreement between the buyer and the broker. However, our holding there is distinguishable. The buyer was not seeking a home, but was a residential developer who agreed to purchase a 144 acre tract of farmland for $250,000. The buyer was engaged in a commercial enterprise and his position *vis-a-vis* the broker was quite different than that of the individual who is purchasing a residence. In *Tanner Associates, Inc. v. Ciraldo*, 33 *N. J.* 51 (1960), upon which *Ellsworth Dobbs* relied, the buyer also was a land developer which contracted for the acquisition of a large tract of land for $220,000. The bargaining power and expertise of such buyers are far superior to those of the average home purchaser. The added protection which we afford to consumer purchasers today is not warranted or required for the type of buyer exemplified in *Ellsworth Dobbs* and *Tanner Associates*.

The buyer's duty to recompense the broker when the buyer defrauds or cheats the broker out of his commission is clear. When that occurs, suits are usually instituted as tort actions for wrongful interference with a broker's prospective economic benefit. *Harris v. Perl*, 41 *N. J.* 455 (1964); *Louis Kamm, Inc. v. Flink*, 113 *N. J. L.* 582 (E.

& A. 1934); *Sustick v. Slatina,* 48 *N. J. Super.* 134 (App. Div. 1957); *McCue v. Deppert,* 21 *N. J. Super.* 591 (App. Div. 1952). In those situations the buyer intends that the seller breach his agreement with the broker and acts accordingly. *Sustick v. Slatina,* 48 *N. J. Super.* at 143–145. Further, where the buyer does not act in good faith, and intentionally violates the provisions of his agreement with the seller and broker, he will be indebted to the broker. *Berg Agency v. Sleepworld-Willingboro, Inc.,* 136 *N. J. Super.* 369 (App. Div. 1975).

In passing we note that where a seller retains a substantial deposit as damages, the seller may be liable to the broker. *Compare Simmons v. Liberty,* 53 *N. M.* 362, 208 *P.* 2d 1070 (1949) *with Smith v. Bretschneider,* 97 *N. H.* 117, 81 *A.* 2d 843 (1951) *and Amies v. Wesnofske,* 255 *N. Y.* 156, 174 *N. E.* 436 (1931). *See* Note, "*Ellsworth Dobbs, Inc. v. Johnson*: A Reexamination of the Broker-Buyer-Seller Relationship in New Jersey," *supra* at 94 n. 72, where the author comments that if the buyer permits the seller to retain the entire deposit which exceeds 10% of the purchase price, such an agreement should be sufficient to render the seller liable to the broker. In some situations then, even though the buyer may not have a direct obligation to the broker, the broker may recover from the seller.

When the defendants initially visited the plaintiff requesting assistance in locating a suitable home, there was no discussion, arrangement or agreement concerning the commission. When the sellers and the defendants agreed on the essential terms of the sale, the broker's form contract was used. The plaintiff presumably knew the defendants' financial status. Its form contract obligated the defendants to procure the purchase money mortgage through the plaintiff and in connection with processing the mortgage application the plaintiff became cognizant of the fact that the defendants, having insufficient cash on hand, would probably have to convert some securities into cash prior to the closing. If the closing had occurred on May 1 and had

not been rescheduled to May 16, the defendants would have completed the sale. Instead the unexpected drop in the market value of the stock beyond the defendants' control forced them to forego the purchase.

The trial court's finding that the defendants acted in good faith is amply supported by the record. The deposit of $14,000 was substantial. The defendants installed an alarm system in the house and paid for some landscaping and carpentry. They had retained an interior decorator. Mr. Bereck appeared at the May 16 closing and frankly and fully disclosed their financial embarrassment due to an event over which they had no control. Their implied promise to the broker to complete the transaction did not encompass a failure to close where they had acted in good faith, and the inability to consummate the deal was not ascribable to any misconduct or wrongdoing, but was due to a circumstance beyond their control. Under these circumstances the buyers are not obligated to pay the broker damages measured by the commission loss.

Judgment of the Appellate Division directing entry of a judgment in favor of the plaintiff is reversed and judgment is entered in favor of the defendants.

SULLIVAN and HANDLER, J.J., concurring in the result.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.