167 N.J. Super. 282 (1979)
400 A.2d 836
VINCENT SULLIVAN AND MONICA SULLIVAN, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
JEFFERSON, JEFFERSON & VAIDA, DEFENDANTS, AND ALICE McDERMOTT, DEFENDANT-APPELLANT.
VINCENT SULLIVAN AND MONICA SULLIVAN, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
ERNEST W. DOCS, INDIVIDUALLY AND T/A THE DOCS AGENCY, DEFENDANT-APPELLANT, AND ANTHONY DONATO, INDIVIDUALLY AND T/A THE V.I.P. AGENCY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 20, 1979.
Decided April 3, 1979.
*285 Before Judges LORA, MICHELS and LARNER.
Mr. Harold G. Cohen argued the cause for appellants Alice McDermott and Ernest W. Docs (Messrs. Wilentz, Goldman & Spitzer, attorneys).
Mr. Gerald M. Zashin argued the cause for respondents Vincent Sullivan and Monica Sullivan.
The opinion of the court was delivered by LARNER, J.A.D.
This appeal presents the question of the liability of a listing broker in a multiple listing arrangement for the fraudulent conversion of deposit moneys by the selling broker. After a plenary trial the trial judge held the listing broker Docs and his employee, Alice McDermott, liable to the sellers on two grounds: (1) breach of their fiduciary duty, and (2) the multiple listing mechanism created a joint venture between the two brokers, rendering each liable for the defalcations of the other.
We find that both theories are legally untenable under the facts herein and reverse.
The Docs Agency (Docs), a licensed real estate broker, entered into a multiple listing agreement with the Sullivans (plaintiffs) to sell their home, with plaintiffs' understanding that other brokers in the area would participate in efforts to effectuate a sale. Several months later another licensed broker, Anthony Donato, trading as V.I.P. Agency, produced a purchaser who ultimately submitted an offer which was accepted by the sellers, and a formal sales contract was executed.
*286 The purchaser had delivered a $100 deposit to the selling broker, Donato, upon submission of the offer and subsequently deposited with him an additional deposit of $2,900 upon the signing of the contract. When Docs' employee, Alice McDermott, contacted Donato a few days later, the latter informed her that he had received the full deposit of $3,000. Further contact between the listing broker and selling broker revealed that the mortgage contingency had been met and the deal was ripe for closing.
The closing was accomplished by mail between the attorneys for the sellers and the purchaser, with the sellers' attorney forwarding the deed and accompanying documents on June 24, 1973 in escrow to the purchaser's attorney pending receipt of the sum of $22,522.67, representing the net balance due to sellers after credit for the deposit already paid to the selling broker. Accordingly, on June 27 the purchaser's attorney forwarded to sellers' attorney a trustee's check in that amount and Donato's check for $3,000 representing the deposit received by him from the purchaser.
The sellers' attorney thereupon forwarded these checks to the clients. Donato's check was returned for insufficient funds and a subsequent replacement check was also returned by the drawee bank for the same reason. Donato converted the deposit moneys entrusted to him to his own use and of course is liable to plaintiffs for this unlawful conversion. This appeal, however, does not involve the claim against him or the other defendants named in the litigation. It is limited to the propriety of the judgment against Docs and its agent, McDermott.
The trial judge relied in part upon the fiduciary duty of a real estate broker to the seller who retains him with the concomitant obligation to "exercise fldelity, good faith and primary devotion to the interests of his principal." Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 553 (1967). This basic standard governing the relationship between principal and broker cannot be denied. And in light of his holding himself out as a specialist in his *287 field of endeavor, a broker's failure to exercise reasonable skill, care and diligence in performing his undertaking will subject him to any resulting damages either for breach of contract or in tort for negligence or breach of his fiduciary duty, as the facts may warrant. Schustrin v. Globe Indem. Co. of New York, 44 N.J. Super. 462, 466 (App. Div. 1957).
Reasoning from this premise, the trial judge found that Docs breached his duty to the sellers by failing to "oversee the transaction." However, we are unable to discern either in the judge's opinion or in the record any factual foundation for finding a breach of duty by Docs or the existence of a causal connection between Docs' involvement and the loss occasioned through the defalcation of the selling broker. Upon close analysis, it is apparent that the trial judge in effect applied a standard of absolute liability to hold Docs responsible  manifestly an erroneous standard even for a fiduciary.
The testimony at trial reveals that Alice McDermott communicated with Donato after the execution of the contract and satisfied herself that the mortgage contingency had been met and that Donato had received the $3,000 deposit from the purchaser. Neither the sellers nor their attorney made a demand upon Docs or Donato for the remittance of the deposit prior to the closing, or proof of its retention in Donato's trust account. And evidence in the record supports the customary practice in the area which sanctions the retention of a deposit by the selling broker pending closing in the absence of a demand for remittance by the seller or his attorney.
Under such circumstances, there was no higher duty on the part of the listing broker to undertake the obligation to secure the deposit moneys for the seller prior to the closing. If the seller was represented by an attorney, who saw no danger in permitting the funds to remain with Donato, a licensed real estate broker, it is difficult to fathom how or why the listing broker should be held to a higher duty. And *288 when the attorney retained by the sellers accepted Donato's personal check through a closing by mail, how can the listing broker be faulted for the consequences?
Does was entitled to rely upon the integrity of the selling broker, who was licensed by the State, and the rigid regulations governing the handling of funds by brokers. See N.J.S.A. 45:15-17(d) and N.J.A.C. 11:5-1.8 and 1.9. As the trial judge noted "Donato's State issued license was presumptive evidence of his honesty." In the absence of evidence pointing by reputation or otherwise to any potential lack of honesty or integrity on the part of Donato, Docs cannot be held responsible for the unanticipated criminal act of this fellow broker. The simplistic generalization of "failure to oversee the transaction" does not suffice to overcome the void of an evidential basis for the violation of any particular standard of conduct on the part of Docs which was causally related to the loss. The finding that Docs and McDermott violated the duty of care owed to plaintiffs is unsupported by the evidence in the record.
We next turn to the alternative basis for liability by which the trial judge equated the relationship of the listing and selling brokers with a joint venture. On this premise he concluded that Docs as one of the joint venturers was responsible for the defalcation of Donato, the other member of the joint venture. While we agree with the conclusion that a joint venturer is liable for the acts of his coventurer within the scope of the business of the venture in the same manner as in a partnership (Jackson v. Hooper, 76 N.J. Eq. 185, 198, (Ch. 1909), rev'd on other grounds 76 N.J. Eq. 592 (E. & A. 1909); 48 C.J.S. Joint Adventures § 13 at 865, § 14 at 871), we reject the premise that the relationship between the listing and selling broker herein under a multiple listing arrangement constitutes a joint venture.
Although participating brokers in the sale of property as a result of multiple listing share in the commissions paid by the seller, this sharing in the fruits of their labors does *289 not per se serve to create a joint venture with its accompanying legal consequences inter se or as to third persons. As we stated in Wittner v. Metzger, 72 N.J. Super. 438 (1962), certif. den. 37 N.J. 228 (1962):
The sine qua non of joint venture is a contract purposefully entered into by the parties. The joint venture is not a status created or imposed by law but is a relationship voluntarily assumed and arising wholly ex contractu, express or implied. [at 443]
See also, 46 Am. Jur.2d Joint Ventures, § 8 at 29; Slaughter v. Philadelphia Nat'l Bank, 417 F.2d 21, 30 (3 Cir.1969); National State Bank of Newark v. Terminal Constr. Corp., 217 F. Supp. 341, 352 (D.N.J. 1963), aff'd 328 F.2d 315 (3 Cir.1964).
We find it unnecessary to examine the other usual elements of a joint venture outlined in Wittner v. Metzger, supra, for the facts of the case before us fail to spell out the primary prerequisite of an express or implied agreement between Donato and Docs to create a joint venture.
The record reveals that the sellers affirmatively agreed to place their property for sale with Docs under the multiple listing plan so as to encourage greater exposure to many brokers in obtaining a purchaser. While Donato, a licensed real estate broker, was not a member of the Middlesex County Multiple Listing Service, his offer to participate as a selling broker could not be rejected by Docs, the listing broker, because of such nonmembership. Docs did not select Donato as his partner or joint venturer; his participation was mandated by applicable law. See Grillo v. Bd. of Realtors of Plainfield Area, 91 N.J. Super. 202 (Ch. Div. 1966); Oates v. E. Bergen Cty. Mult. List. Serv., 113 N.J. Super. 371 (Ch. Div. 1971); Pomanowski v. Monmouth Cty. Bd. of Realtors, 152 N.J. Super. 100 (Ch. Div. 1977). As a consequence, the joint participation resulted from the effect of the operation of law upon their status as regulated real estate brokers and *290 not from a voluntary consensual undertaking between them arising out of a multiple listing service.
Such a relationship, wherein one broker obtains the listing and another procures the purchaser, does not constitute a joint venture. Each broker retains his independent status within the ambit of his function in the selling process. And except for the sharing of the commission, the factual complex herein lacks the basic criterion of a joint venture, namely, the voluntary agreement of the parties to form a relationship with the intent to create a joint venture. The trial judge therefore erred in creating such a joint venture by judicial fiat and in imposing the duties and liabilities flowing therefrom.
Accordingly, we find as a matter of law that defendants Docs and McDermott are not liable to plaintiffs for the loss occasioned by the unlawful conversion by Donato, the selling broker.
We therefore reverse and remand for the entry of judgment in favor of Ernest W. Docs, individually and trading as The Docs Agency, and Alice McDermott.