OPINION OF THE COURT
Gabriel M. Krausman, J.
In July of 1981 plaintiff, Carl Blackburn, was spraying his kitchen with a can of “King Spray Automatic Room Fogger Roach and Insect Killer #IV” (King Spray). While being discharged from the can, the insecticide vapors ignited and exploded, injuring plaintiff. Subsequent to the occurrence, Mr. Blackburn commenced an action against Continental Group, Inc., and its division Continental Can Company (Continental), the movant herein, and a number of other defendants. The action against Continental is founded on the theory of strict products liability alleging that the warnings and instructions *624 lithographed onto the King Spray can by Continental failed to adequately warn Mr. Blackburn of the dangers and hazards inherent in the use of the insecticide. Continental now moves for an order granting summary judgment and dismissing the complaint and cross claims against it.
It is hornbook law that the granting of summary judgment is a drastic remedy and should bé granted only where it is without doubt that triable issues of fact do not exist. (Rotuba Extruders v Ceppos, 46 NY2d 223 [1978].) Keeping this exhortation in mind, the court must determine, in the first instance, if in this case there exist issues of fact which would preclude the granting of summary judgment. For the purposes of deciding this motion, the court accepts as true the allegations that the insecticide packaged in the King Spray can was inherently dangerous, that proper warnings and instructions for use were required to be placed on the King Spray label and that the warnings and instructions for use lithographed onto the King Spray label were inadequate. There is no disagreement that Continental’s role with regard to the manufacture of the insecticide was limited to production of an unfilled, uncapped cannister and to lithographing the label, the contents of which were designed and furnished it by one of the defendants herein, onto the cannister. Thus, the only issue for determination with regard to Continental is: Does Continental, by virtue of its role in the production and marketing of the King Spray owe plaintiff a duty to ensure the adequacy of the warnings and instructions for use that it lithographed onto the label? That issue can be determined by this court as a matter of law. (See, Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55 [4th Dept 1980].)
Under the doctrine of strict products liability the manufacturer of a product is under a nondelegable duty to produce a defect free product. Liability is imposed irrespective of fault. “[T]he scienter that is so vital to the negligence suit need not be shown.” All that is required is that the product be found defective.[1] (Caprara v Chrysler Corp., 52 NY2d 114, 123 [1981]; Codling v Paglia, 32 NY2d 330 [1973].) If a defect is found to exist, the manufacturer of the defective product may be found liable to a remote user who was injured by the defective product *625 notwithstanding the user’s lack of privity with the manufacturer, provided, however, that the defect was a substantial factor in causing the injury. (Codling v Paglia, 32 NY2d 330, supra.) As the law of strict liability has evolved in this jurisdiction, liability extends not only to those who manufacture the defective product, but also to any party in the direct distributive chain. Thus, manufacturers, distributors, retailers and makers of component parts of the defective product can be found liable. (See, Cover v Cohen, 61 NY2d 261; Mead v Warner Pruyn Div., Finch Pruyn Sales, 57 AD2d 340 [3d Dept 1977]; Queensbury Union Free School Dist. v Walter Corp., 91 Misc 2d 804 [Sup Ct, Warren County 1977].)
Imposition of liability irrespective of fault, upon parties involved in placing a product in the stream of commerce in favor of the user of the product, is based on the principle that the party in the best position to have eliminated the danger must respond in damages. Casting the burden of recompensing the injured user of a defective product upon those in the direct chain of manufacture or marketing will spread the burden equally on those in the system and serve to pressure and encourage the party responsible for the defect to turn out a safer and more attractive product. If a product is found to be defective “without more * * * ‘the only one in the best position to have eliminated those dangers’, must respond in damages.” (Caprara v Chrysler Corp., 52 NY2d 114, 124, supra; Micallef v Miehle Co., Div. of Miehle-Gross Dexter, 39 NY2d 376 [1976]; Codling v Paglia, 32 NY2d 330, supra.)
The articulated public policy does not create an unmitigated duty and extend without limitation the reach of liability. Under the rationale of Codling v Paglia (supra), and its progeny the pool of prospective defendants should be enlarged only if so doing would place the burden of redressing the wrong on the appropriate parties. The court’s decision in Codling v Paglia (supra) only removed the privity requirement and allowed the injured user to sue directly those who created the defect and marketed it. It did not intend to create a new cause of action in favor of an injured user against a party who did not create or market the defective product if that party could not have been sued prior to Codling by one of those in the chain of liability. To fabricate a duty and hold responsible a party who lacks control and discretion over production of the defective merchandise and whose role in placing the defective product in the stream of commerce is tangential to the manufacture of the product would result in unnecessary expenditure, add unnecessary cost and not *626 serve public policy. (See, Hunger v Heider Mfg. Corp., 90 AD2d 645 [3d Dept 1982]; Lesnefsky v Fischer & Porter Co., 527 F Supp 951 [ED Pa 1981].)
In this case, it is undisputed that Continental manufactured the can and lithographed the label onto the King Spray cannister. However, those facts alone do not thrust upon Continental a duty to ensure the adequacy of the warnings and instructions for use. A duty arises only if it can be shown that Continental either actively participated in designing the contents of the label or was in the direct chain of those who distributed the defective product to the injured user. In this case, apart from conjecture, conclusory statements and innuendo, there is no factual basis that would allow the court to reach the conclusion that Continental owed a duty.[2] Continental’s conduct, based on the facts of this case viewed in the light most detrimental to it, and most favorable to those opposing this motion, with regard to lithographing the instructions and warnings it printed on the label, was limited to reducing information, furnished it by another, to a form that could be copied onto the King Spray can. That task, i.e., the printing, was not performed in a defective manner. Thus, Continental who was not hired to design the label and who did not have expertise equal or greater to the label’s designer to discern the inadequacy of the warnings and instructions was not the party best suited to eliminate the danger in the most cost effective fashion. Furthermore, prior to Codling v Paglia (supra), Continental would not have been in the chain of liability. Also, Continental was not in the direct chain of those responsible for placing the King Spray cannister in the stream of commerce. As such, unlike the distributor of a product, Continental was not in a position to refuse to market the defective item and pressure the manufacturer to either *627 produce a safer item or suffer financial loss. In essence, Continental’s conduct with regard to the manufacture and marketing of the product was ministerial and did not rise to a level sufficient to bring it within the class of those who may be held responsible in strict liability.[3]
It is the determination of this court that under the circumstances of this case viewed in the light most favorable to those opposing this motion, Continental was under no duty to plaintiff Carl Blackburn to ascertain or ensure the adequacy of the instructions and warnings printed on the King Spray cannister. Absent a duty, there is no action cognizable against Continental. Furthermore, since Continental was under no duty, it cannot be held liable on the cross claims against it. Accordingly, the motion for summary judgment dismissing the complaint is granted in all respects and the cross motion to convert the cross claims to a third-party complaint is denied in all respects.

. The nature and quantum of proof required in an action in negligence and an action in strict liability based on a failure to warn are almost indistinguishable. However, there remains a distinction, in the strict liability case, unlike the negligence action, it need not be proven that the defendant knew or should have known about the harmful nature of the product without the warning or adequate warning. (See, Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55 [4th Dept 1980].)

. The argument that Continental should have discovered the inadequacy of the warning, appreciated the danger presented thereby and either remedied the situation or notified its client because it is one of the major container manufacturers in the world holds no water. Standing alone, the fact that movant is a large corporation does not support the contention that it had the expertise which would have enabled it to discover the defect without incurring unnecessary and additional cost.
The depositions and competent evidence proffered in opposition to this motion do not, without resort to conjecture, lead to the conclusion that Continental had the expertise to ascertain the label’s inadequacies and therefore cannot be used to defeat this motion to dismiss. (Moxon v Barbour, 106 AD2d 558 [2d Dept 1984]; Handlin v Burkhart, 101 AD2d 850 [2d Dept 1984].)
In light of the determination herein, although the court is inclined to answer in the negative, the court need not reach the issue of whether a duty to warn would be imposed upon Continental if in fact it had the expertise necessary to discern the inadequacy of the label’s instructions and warnings.

. The case law in this jurisdiction does not support an opposite conclusion. A review of the case law in this jurisdiction with regard to which parties an action in strict liability can be maintained reveals that the parties held strictly liable either designed the defect, manufactured the product improperly or were in the direct distributive chain of those who placed the defective product into the stream of commerce. (See, Cover v Cohen, 61 NY2d 261 [1984] [strict liability action against car manufacturer who designed defective acceleration system and dealer who sold car]; Caprara v Chrysler Corp., 52 NY2d 114 [1981] [action against automobile manufacturer who designed defective ball joint]; Codling v Paglia, 32 NY2d 330 [1973] [strict liability action against automobile manufacturer who designed defective steering mechanism]; Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55 [4th Dept 1980] [strict liability action against manufacturer and designer of an allegedly defective valve of propane gas cylinder held proper]; Mead v Warner Pruyn Div., Finch Pruyn Sales, 57 AD2d 340 [3d Dept 1977] [strict liability action against retailer who sold an allegedly defective refrigerator held proper]; Chandler v Northwest Eng. Co., Ill Mise 2d 433 [Sup Ct, Bronx County 1981] [strict liability against manufacturer and seller of a defectively designed shovel held proper]; Kirby vRouselle Corp., 108 Mise 2d 291 [Sup Ct, Monroe County 1981] [strict liability action against distributor of defective punch press].) There is no viable case law to support the contention that a party whose role was tangential to the design, manufacture and marketing of a defective product can be held responsible in a strict products liability action.
Parenthetically, it should be noted that the rule of law articulated in Wellman v Supreme Farmstead Equip. (100 Mise 2d 956 [Sup Ct, Otsego County 1979]) does not follow from the principles annunciated in this decision. That decision is premised on the axiom that responsibility does not attach to the distributor of a defective product because liability is dependent upon fault and the distributor was not at fault in causing the defect. This court disagrees with Wellman inasmuch as that decision absolved from strict liability a distributor who was in the direct chain of those placing a defective product into the stream of commerce.