**OSCAR MAYER CORPORATION, Plaintiff,**

v.

**MINCING TRADING CORP., et al., Defendants, Third–Party Plaintiffs,**

v.

**BACTI–CHEM LABS, INC., et al., Third–Party Defendants.**

Civ. A. No. 88–3469.

United States District Court, D. New Jersey.

Aug. 7, 1990.

As Amended Aug. 27, 1990.

Michael F. Quinn, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for plaintiff.

Michael R. Carlucci, Law Offices of Joseph G. Mosolino, East Hanover, N.J., for defendants, third-party plaintiffs.

Gregory J. Irwin, Harwood Lloyd, Hackensack, N.J., for third-party defendant Daarnhouwer.

Michael A. Graham, Garrity, Fitzpatrick, Graham, Hawkins & Favetta, Montclair, N.J., for third-party defendant A.A. Sayia & Co., Inc.

## OPINION

WOLIN, District Judge.

Third-party defendant A.A. Sayia & Co., Inc. ("Sayia") moves for summary judgment asserting that no genuine issues of material fact exist and Sayia is entitled to judgment as a matter of law. Third-party plaintiffs Mincing Trading Corp. and Mincing Overseas Spice Co., Inc. (collectively "Mincing") and third-party defendant Daarnhouwer (New York), Inc. ("Daarnhouwer") allege that fact issues remain which preclude the entry of summary judgment. The Court has reviewed all the submissions of the parties. For the reasons which follow, the Court finds that no genuine issues of material fact exist and third-party defendant Sayia is entitled to judgment as a matter of law. Therefore, the Court will grant Sayia's motion for summary judgment and dismiss the third-party complaint and the crossclaims as against Sayia.

### I. BACKGROUND

In the fall of 1986, Mincing received an order for 10,000 pounds of whole black pepper from plaintiff Oscar Mayer Corporation ("Oscar Mayer"). Brief of Mincing in Opposition to the Summary Judgment Motion ("Brief of Mincing") at 1. Mincing requested the assistance of Sayia, a broker in the spice business, to locate a merchant who would sell the required amount of pepper. *Id.* Sayia located Daarnhouwer, an importer and seller of spices, who was able to sell the required amount of pepper. The lot of pepper had been found to comply with the American Spice Trade Association cleanliness specifications after testing by Commodity Laboratories, Inc. on August 5,

1986, and by Bacti–Chem Labs, Inc. on September 30, 1986.[1] On or about October 21, 1986, Mincing purchased 183 bags of black pepper from Daarnhouwer. Final Pretrial Order at 3. Sayia prepared Spot Contract No. 63174 dated October 21, 1986, by which Daarnhouwer sold 10,000 pounds of "good merchantable quality Brazilian Black Pepper" to Mincing. Affidavit of Peter Sayia at ¶ 4.[2] It is not disputed that Sayia never had title to, possession or control of the peppercorns.

On or about November 11, 1986, Mincing sold the lot of 10,000 pounds of "whole black recleaned and treated peppercorns" to Oscar Mayer to be used as a spice in its food products. Final Pretrial Order at 2, 4. Based on its experience in supplying peppercorns to Oscar Mayer, Mincing conducted a series of procedures and/or tests on the peppercorns prior to delivery to Oscar Mayer. *Id.* at 3. Mincing delivered the peppercorns on or about December 15, 1987, and received full payment of the contract price. *Id.*

The shipment of peppercorns contained small stones, which remained undetected after a series of inspections and tests. *Id.* Consequently, the salami to which Oscar Mayer added the peppercorns was inedible and dangerous to the consumer. *Id.* at 4. As a result, Oscar Mayer incurred damages including expenses sustained in the settlement of claims with its customers who suffered dental injuries. Complaint at 5. Oscar Mayer then filed a complaint against Mincing in which it alleged the following causes of action: breach of contract, breach of express and implied warranties, negligent misrepresentations, and strict liability in tort.

Mincing then filed a third-party complaint against Daarnhouwer, Sayia, and the two laboratories. The third-party complaint against Sayia alleged negligence, breach of express and implied warranties, and strict liability in tort. Sayia moved for summary judgment to dismiss the third-party complaint and any cross-claims

against it. Third-party plaintiff Mincing and third-party defendant Daarnhouwer each filed a brief in opposition to Sayia's motion for summary judgment.

## II. DISCUSSION

### A. Standard for Granting Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hersch v. Allen Products Co.,* 789 F.2d 230, 232 (3d Cir.1986). In making this determination, a court must make all reasonable inferences in favor of the non-movant. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Id.* Moreover, if the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Therefore, when the non-moving party's evidence is merely "colorable" or "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511.

---

1. Both Commodity Laboratories, Inc. and Bacti–Chem Labs, Inc. were also named third party defendants by Mincing.

2. After execution of the contract, Sayia received its brokerage commission from Daarnhouwer. Affidavit of Peter Sayia at ¶ 7.

## B. Negligence

Mincing and Daarnhouwer claim that Sayia shares in the alleged negligence of the third-party defendants inasmuch as Sayia failed to investigate whether the pepper that Daarnhouwer offered to supply to Mincing was suitable to be prepared for resale for use in food products after customary spice industry processing. Brief of Mincing at 6. Mincing contends that a broker has a duty to discover the hidden defects in products which, through his services, will be exchanged between a buyer and seller. *Id.*

■ A broker is an intermediary. *Tournier v. C.B. Snyder Realty Co.*, 130 N.J.L. 104, 106, 31 A.2d 492 (1943). A broker is one who is engaged, for a commission, in negotiating contracts for others that relate to property of which he has no concern. *State v. Abortion Information Agency, Inc.*, 69 Misc.2d 825, 323 N.Y.S.2d 597, 600 (Sup.Ct.1971). A broker's primary function is to bring a buyer and seller together to negotiate with each other for the purpose of making a contract. *Trihy v. Belsha*, 52 Misc.2d 590, 276 N.Y.S.2d 313, 315 (Dist.Ct.1966), *aff'd*, 55 Misc.2d 797, 286 N.Y.S.2d 424 (App.Term 1967). A broker is entitled to compensation when a sale has been consummated because of his labors. *Id.* From the stipulated facts and the pleadings it is undisputed that Sayia was a broker in the transaction between Daarnhouwer and Mincing. Accordingly, the issue for determination is whether a spice broker has a duty to discover the latent defects of peppercorns that are exchanged between parties as a consequence to the broker performing his function. Whether this duty exists is a question of law.

■ The duty of a broker is to act with good faith toward his principal and not to act in any manner inconsistent with his agency or trust. *Rothman Realty Corp. v. Bereck*, 73 N.J. 590, 599, 376 A.2d 902 (1977); *Selcow v. Floersheimer*, 20 A.D.2d 889, 248 N.Y.S.2d 934, 935 (App. Div.1964). It is the broker's duty to keep the principal fully informed of all material facts which come to the broker's attention with respect to the transaction in which he is engaged and which affect the principal's interest and might influence his action. *Silverman v. Bresnahan*, 35 N.J.Super. 390, 395, 114 A.2d 307 (App.Div.1955); *Murph & Fritz's Place, Inc. v. Loretta*, 112 Misc.2d 554, 447 N.Y.S.2d 205, 207 (Cty.Ct.1982); *Union Bank of Switzerland v. HS Equities, Inc.*, 457 F.Supp. 515, 522 (S.D.N.Y.1978). The duty to divulge information does not extend to all matters peripherally affecting the transaction. *See, Sullivan v. Jefferson, Jefferson & Vaida*, 167 N.J.Super. 282, 287, 400 A.2d 836 (App. Div.1979); *Murph & Fritz's Place*, 447 N.Y.S.2d at 209. *See also, Harrington v. Norco Fruit Distributors, Inc.*, 40 A.D.2d 668, 337 N.Y.S.2d 59, 60 (App.Div.1972), *aff'd*, 33 N.Y.2d 607, 347 N.Y.S.2d 570, 301 N.E.2d 542 (N.Y.1973) (commodities broker was under no obligation, except as provided in U.C.C. § 7–507); *Thorp v. Gosselin Hotel Co.*, 65 Ill.App.2d 107, 212 N.E.2d 1, 4 (1965) (broker for prospective purchaser of hotel had no duty to explore hotel's profits, nor to advise principal to inspect property, nor to completely inspect property himself).

■ The standard by which a broker's performance is to be measured is to be found in the brokerage agreement, and not in the agreement between the principal and a customer. *Sanders A. Kahn Associates, Inc. v. Maidman*, 69 Misc.2d 90, 329 N.Y. S.2d 121, 123 (Sup.Ct.1971), *aff'd*, 38 A.D.2d 798, 329 N.Y.S.2d 318 (App.Div.), *aff'd*, 30 N.Y.2d 831, 335 N.Y.S.2d 77, 286 N.E.2d 462 (N.Y.1972). In performing his undertaking, a broker must exercise reasonable care, skill and diligence. *Sullivan*, 167 N.J.Super. at 286–87, 400 A.2d 836; *Murph & Fritz's Place*, 447 N.Y.S.2d at 207.

■ The law of both New York and New Jersey described above, which governs the duty of a broker and the standard of care required of a broker, is, in all relevant respects, identical. These principles may, without qualification, be applied to a spice broker. In the absence of knowledge or notice of facts that would put a prudent person on inquiry, a spice broker does not have a duty or obligation to discover latent

defects in a shipment of peppercorns and is not responsible if the quality of the peppercorns should later be found to be inferior to that promised in the contract between the buyer and the seller.

Because the pleadings, affidavits and other admissions of the parties raise no inference that Sayia knew or had reason to know of any latent defect in the peppercorns, Sayia had no duty to inspect the quality of the peppercorns. The Court, therefore, determines that as a matter of law Sayia is not negligent and that, accordingly, on this issue Sayia is entitled to summary judgment.

## C. Breach of Express and Implied Warranties

Mincing alleges in Counts Four and Five of the Third Party Complaint that Sayia breached its express and implied warranties that (1) the peppercorns were properly "manufactured, designed, packaged, prepared, developed, inspected, tested, assembled and labeled," (2) appropriate warnings and safeguards had been given, (3) the peppercorns were free of defects and fit for the purposes and uses for which they were sold, and (4) they were merchantable. Third Party Complaint at 9–11.

■ New Jersey law provides in pertinent part that:

(1) Express warranties by the *seller* are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.Stat.Ann. § 12A:2–313 (West 1962) (emphasis added). An identical provision governs express warranties under New York law. *See* N.Y. U.C.C. Law § 2–313 (McKinney 1964). Both New Jersey and New York law clearly state that a "seller" is liable for express warranties. A "seller" is defined as a person who sells or contracts to sell goods. N.J.Stat.Ann. § 12A:2–103(1)(d) (West 1962); N.Y. U.C.C. Law § 2–103 (McKinney 1964). A "sale" consists of the passing of title from the seller to the buyer for a price. N.J.Stat. Ann. § 12A:2–106(1) (West 1962); N.Y. U.C.C. Law § 2–106 (McKinney 1964). As Sayia never had title to the peppercorns, it could not "sell" them. The facts here do not dispute that Sayia is a broker and not a seller. Accordingly, Sayia cannot be liable for any express warranties concerning the peppercorns sold from Daarnhouwer to Mincing. With regard to an implied warranty of merchantability, the laws of both states similarly provide that:

(1) Unless excluded or modified ... a warranty that the goods shall be merchantable is implied in a contract for their sale *if the seller is a merchant with respect to goods of that kind.*

N.J.Stat.Ann. § 12A:2–314 (West 1962); N.Y. U.C.C. Law § 2–314 (McKinney 1964) (emphasis added). Liability for an implied warranty of merchantability, therefore, is limited to sellers. Again, it is undisputed, and the Court so finds, that Sayia is a broker and not a seller as defined in either state's commercial code. Therefore, Sayia cannot be liable for any implied warranties concerning the peppercorns.

■ The identical analysis applies to an implied warranty of fitness for a particular purpose. Such an implied warranty exists where

the *seller* at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the *seller's* skill or judgment to select or furnish suitable goods.

N.J.Stat.Ann. § 12A:2–315 (West 1962); N.Y. U.C.C. Law § 2–315 (McKinney 1964) (emphasis added).

In sum, there is no dispute that Sayia is a broker and not a seller in the transaction at issue. Accordingly, the warranty provisions of Article 2 of the Uniform Commercial Code enacted in both New York and New Jersey do not impose liability for

breach of warranty upon Sayia. Moreover, in its Brief in Opposition to Sayia's motion for summary judgment, Mincing does not provide any evidence to support its claim that a material issue of fact exists as to whether Sayia breached its warranty obligations. For these reasons, Sayia is entitled to summary judgment as a matter of law on the issue of Sayia's alleged breach of warranty.

### D. Strict Liability in Tort

Mincing also alleges, in Count Six of its Third Party Complaint, that Sayia is liable under the doctrine of strict liability in tort for the damages incurred by Oscar Mayer. Third-party Complaint at 13. Sayia contends that strict liability is not available against a broker who does not exercise any degree of control over a defective product. Sayia Brief at 18. The issue for determination is whether Sayia, by virtue of its role as a broker in the distribution of the peppercorns, owed a duty to ensure that the peppercorns were free of defects.

Under the doctrine of strict products liability the manufacturer of a product is under a duty to produce a defect-free product, and liability is imposed irrespective of fault. *Waterson v. General Motors Corp.*, 111 N.J. 238, 267–68, 544 A.2d 357 (1988); *Blackburn v. Johnson Chemical Co., Inc.*, 128 Misc.2d 623, 490 N.Y.S.2d 452, 453 (Sup.Ct.1985). Liability extends not only to those who manufacture the defective product, but also to any party in the chain of distribution. *Promaulayko v. Johns Manville Sales Corp.*, 116 N.J. 505, 510, 562 A.2d 202 (1989); *Blackburn*, 490 N.Y.S.2d at 454. Liable parties include distributors, retailers and makers of component parts of the defective product. *Promaulayko*, 116 N.J. at 511, 562 A.2d 202; *Blackburn*, 490 N.Y.S.2d at 454. A basic principle underlying the development of strict liability in tort is the allocation of the risk of loss to the party best able to control it by eliminating the danger. *Promaulayko*, 116 N.J. at 509, 562 A.2d 202; *Blackburn*, 490 N.Y.S.2d at 454. Spreading the burden of compensating the injured user among those in the direct chain of manufacture or marketing serves to pressure and encourage the party responsible for the defect to supply a safer product. *Santiago v. E.W. Bliss Div., Gulf and Western Mfg. Co.*, 201 N.J.Super. 205, 224, 492 A.2d 1089 (App.Div.1985); *Blackburn*, 490 N.Y.S.2d at 454.

Sayia acted as a broker between an importer of whole black peppercorns and a supplier of recleaned and treated peppercorns for use as a spice in foods. Sayia never had title to, possession of, or control over the lot of peppercorns.

This Court is not aware of a precise definition of "chain of distribution" for the purpose of attributing responsibility under strict liability in tort. The case law strongly suggests, however, that the category is meant to include manufacturers, distributors, suppliers or retailers and other parties that receive, sell, or resell the product. *See, e.g., Santiago*, 201 N.J.Super. at 223, 492 A.2d 1089. A broker who negotiates a contract of sale between the merchants who will be parties to the actual sale transaction does not fall within this category. Whereas an enterprise engaged in the chain of distribution can recapture the expense of an occasional defective product by an increase in the cost of the product, *id.* at 224, 492 A.2d 1089, and a party that is in a contractual relationship with the manufacturer or supplier is in a position to exert pressure to ensure the safety of the product, *Newmark v. Gimbel's Inc.*, 54 N.J. 585, 600, 258 A.2d 697 (1969), a broker can do neither.

Sayia was not in a position to eliminate defects from the peppercorns. In these circumstances it would be unfair to impose strict liability on Sayia for damages incurred as a result of the defective peppercorns. In similar circumstances it was held that a broker between the manufacturer of a bulk drug and the manufacturer of the drug in final packaged form, although a facilitator in the chain of distribution of the drug, was not strictly liable in tort for damages caused by the drug because the broker, who had no control over the drug whether by manufacture, packing or marketing, was not an active participant in its

chain of distribution. *Lyons v. Premo Pharmaceutical Labs, Inc.,* 170 N.J.Super. 183, 196–97, 406 A.2d 185 (App.Div.), *cert. denied,* 82 N.J. 267, 412 A.2d 774 (1979). The Court therefore determines that as a matter of law Sayia has no responsibility under the doctrine of strict liability.

## III. CONCLUSION

For the foregoing reasons, the Court finds that no genuine issues of material fact exist and third-party defendant Sayia is entitled to judgment as a matter of law. Therefore, the Court will grant Sayia's motion for summary judgment and dismiss the third-party complaint and the cross-claims as against Sayia.