Steven AMES Plaintiff

v.

FORD MOTOR COMPANY; Bridgestone/Firestone, Inc.; Bridgestone Corporation; Border Transfer Services, Inc. Defendants.

No. CIV.A. L–03–85.

United States District Court,
S.D. Texas,
Laredo Division.

Oct. 28, 2003.

C. Tab Turner, Turner & Associates, North Little Rock, AR, for Steven Ames, plaintiff.

Evan Nicholas Kramer, Brown McCarroll LLP, Knox D. Nunnally, Vinson & Elkins, Houston, TX, Kenneth J. Ferguson, Clark Thomas et al, Austin, TX, for Ford Motor Company, Bridgestone/Firestone Inc, Bridgestone Corporation, Border Transfer Services, Inc., defendants.

## MEMORANDUM AND ORDER

KAZEN, Chief Judge.

On October 8, 2003, the Court indicated that it was considering a *sua sponte* summary judgment motion as to Plaintiff's case against Defendant Border Transfer Services ("Border Transfer"). (Docket No. 18). The parties were granted until October 24, 2003 to submit comments. No parties responded. After review of the file, the Court now grants summary judgment in favor of Border Transfer.

This lawsuit arises out of an automobile accident involving a Ford Explorer which occurred in Sonora, Mexico on May 23, 2001. In his original petition, Plaintiff Steven Ames alleges that he was injured in

that accident as a result of defects in the Wilderness AT tires used on the vehicle. He filed this cause of action against Defendants Ford Motor Company ("Ford"), Bridgestone/Firestone Inc. ("Firestone"), Bridgestone Corporation ("Bridgestone") and Border Transfer.

The viability of Plaintiff's claims against Border Transfer depends on whether Border Transfer would qualify as a "seller" for liability purposes under Texas products liability law. The term "seller" is defined in TX Civ. Prac. & Rem.Code, § 82.001(3) as "a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof." This definition was adopted in 1993, and the Court finds no authority interpreting that term in any manner relevant to the issue presented here. Ames cites *Fitzgerald v. Advanced Spine Fixation Systems*, 996 S.W.2d 864 (Tex.1999), for the proposition that the term "seller" is defined broadly under Texas law. The issue in that case was whether a manufacturer was required to indemnify an individual who unquestionably was a seller of the product, but who did not sell the particular product alleged in a lawsuit to have caused harm. The seller was dismissed from the injury case but then sought indemnity for its litigation expenses. The Texas Supreme Court's analysis of the term "seller" in that context has no relevance whatever to the instant case.

Ames correctly argues that under prior Texas law, a defendant could be held liable as a seller as long as (s)he was "engaged in the business of introducing the product into channels of commerce." *Barham v. Turner Construction Co. of Tex.*, 803 S.W.2d 731 (Tex.App.—Dallas 1990). This case does little more than foretell the language of § 82.001(3). The *Barham* court ultimately found that a contractor was not

a seller, relying on *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex. 1978). That case, holding that a lessor qualified as a seller under products liability law, assumed that the lessor had physical possession of the defective product, which was apparently considered to be a highly relevant factor. *Id.* ("The product ... must reach the user in essentially the same condition as when it left the seller's possession.").

Defendant Ford submitted the affidavit of Francisco Noriega, the owner of Border Transfer, who avers that Border Transfer not only does not "sell, market, promote or... distribute" vehicles, but "never takes physical possession, control, [or] ownership" of them. (Docket No. 1, Exhibit B) Ames has offered no evidence refuting this statement, but only conclusory, undocumented assertions that Border Transfer is an *entity which* "re-sells" vehicles into Mexico. (Docket No. 5)

■ In this case, Border Transfer acted as a service provider, assisting the purchaser of the Ford Explorer, Grupo Anchor, with paperwork necessary to import the vehicle into Mexico. Service providers have never been deemed sellers under Texas law. *See Thomas v. St. Joseph Hosp.*, 618 S.W.2d 791, 796 (1981) (holding that providers of defective services not subject to strict liability); *see also*, Restatement (Third) of Torts: Prod. Liab. § 19 (1998) ("Services, even when provided commercially, are not products.") Service providers have been held liable when the service itself was defective, but not because of a defective product incidental to the service. *See Langford v. Kraft*, 551 S.W.2d 392, 396 (Tex.Civ.App.1977) (finding an engineer liable for incorrectly diverting water and thereby damaging property); *Moody v. City of Galveston*, 524 S.W.2d 583 (Tex.Civ.App.1975), (holding city liable for delivering water mixed with flammable gas). Plaintiffs make no claim

that Border Transfer was negligent in providing its services.

As a service provider, a customs broker is more akin to a financier, finance lessor, or broker who merely enables a transaction between a true seller and purchaser, without exercising control over the product. In these contexts, courts have consistently found that the service provider was not a seller. *See Cole v. Elliott Equip. Corp.,* 653 F.2d 1031, 1034–35 (5th Cir. 1981) (affirming the district court's finding of no strict liability under Texas law against a commercial lessor who is not marketing or supplying, but is merely a financier whose collateral is the defective product); *Wynn v. Kensington Mortg. & Finance Corp.,* 697 S.W.2d 47, 50 (Tex. App.1985) (finding financing lender not liable for defective mobile home); *Lyons v. Premo Pharm. Labs, Inc.,* 170 N.J.Super. 183, 406 A.2d 185 (1979) (broker never had control over product, and his passive role prevents holding him strictly liable); *Oscar Mayer Corp. v. Mincing Trading Corp.,* 744 F.Supp. 79 (D.N.J.1990) (holding under New Jersey and New York state laws that a broker was not liable as a seller under New York UCC for defects in merchandise and had no duty to inspect); *Balczon v. Machinery Wholesalers Corp.,* 993 F.Supp. 900 (W.D.Pa.1998) (holding under Pennsylvania law, which relies on Restatement (Second) of Torts § 402A, that broker who sold press, but had no control or involvement in manufacture or design, made no representations as to quality or soundness and never physically possessed product was not seller subject to strict liability).

■ Also persuasive is the Restatement's declaration that a finance lessor, as opposed to a commercial lessor, is not liable as a seller, *nor* are *"persons assisting or providing services to product distributors"* thus *"indirectly facilitating the commercial distribution of products."*

Restatement (Third) of Torts: Prod. Liab. § 20 (1998) (italics added). This language fits the role of Border Transfer in the sale of the Ford Explorer, as stated in Noriega's affidavit: "(Border Transfer) receives invoices and VIN numbers from (Ford) and prepares the documents necessary.... (Border Transfer) provides a report to the distribution plant in Mexico City regarding the status and number of vehicles being imported." This description is confirmed by 19 USCA § 1641, which defines "customs business" as:

"those activities involving transactions with the Customs Service concerning the entry and admissibility of merchandise, its classification and valuation, the payment of duties, taxes, or other charges assessed or collected by the Customs Service upon merchandise by reason of its importation, or the refund, rebate, or drawback thereof. It also includes the preparation of documents or forms in any format and the electronic transmission of documents, invoices, bills, or parts thereof, intended to be filed with the Customs Service in furtherance of such activities, whether or not signed or filed by the preparer, or activities relating to such preparation, but does not include the mere electronic transmission of data received for transmission to Customs."

Considering these authorities and in the absence of any relevant authority to the contrary, the Court concludes that under the facts of this case, Border Transfer Services, Inc. would not be deemed a seller for products liability purposes under Texas law.

For the foregoing reasons, summary judgment in favor of Border Transfer is GRANTED.