224 N.J. Super. 391 (1988)
540 A.2d 893
MARIE PROMAULAYKO AS ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOHN PROMAULAYKO, PLAINTIFF,
v.
AMTORG TRADING CORPORATION, DEFENDANT, CROSS-CLAIMANT-APPELLANT, AND LEONARD J. BUCK, INC., DEFENDANT, CROSS-CLAIMANT-RESPONDENT AND JOHNS MANVILLE SALES CORPORATION SUCCESSOR TO AND IN LIEU OF JOHNS MANVILLE PRODUCTS CORP.; JOHNS MANVILLE CANADA INC. FORMERLY KNOWN AS CANADIAN JOHNS MANVILLE CO., LTD., CANADIAN JOHNS MANVILLE AMIANTE LTD. FORMERLY CANADIAN JOHNS MANVILLE ASBESTOS LTD.; JOHNS MANVILLE CORPORATION; JOHN DOE TRADE ASSOCIATION; JOHN DOE CORPORATION; ASBESTOS CORPORATION LTD. INDIVIDUALLY AND AS SUCCESSOR TO JOHNSON'S COMPANY LTD.; YORK INDUSTRIES INC.; CELOTEX CORPORATION; CAPE ASBESTOS LTD.; NORTH AMERICAN ASBESTOS CORPORATION; NATIONAL GYPSUM; VERMONT ASBESTOS GROUP; A.N. DERRINGER INC.; CAREY CANADIAN MINES; KENNETH SMITH, M.D.; AND THE ASSOCIATED ORE AND METAL CORPORATION LTD., DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1988.
Decided April 20, 1988.
*392 Before Judges J.H. COLEMAN and O'BRIEN.
Arthur D. Bromberg argued the cause for appellant (Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, attorneys; Arthur D. Bromberg and Richard D. Picini on the brief).
John C. Kennedy argued the cause for respondent (O'Donnell, Kennedy, Vespole & Piechta, attorneys; John C. Kennedy of counsel and on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The novel question presented in this appeal is whether in a strict liability case, one distributor in a chain of distributors of a defective product is entitled to common law indemnification from another distributor where both are found to be vicariously liable to an injured party. Here, the primary liability or the defect in the product was the absence of a warning on a product which proximately caused asbestosis. The trial judge ordered common law indemnification.[1] We now reverse.
The essential facts are not complicated. John Promaulayko was employed for more than 40 years by the Ruberoid Corporation, South Bound Brook Plant (Ruberoid). His job was to assist in the manufacture of asbestos shingles. His job exposed him to asbestos fiber which caused him to contract *393 asbestosis. He died on October 1, 1980. Plaintiff filed a wrongful death and a survivor's action against the suppliers of asbestos fiber and asbestos containing products to Ruberoid during the 40 years John Promaulayko worked for Ruberoid. The claims were based on defective warnings on the effects of asbestos fiber. See Fischer v. Johns-Manville Corp., 103 N.J. 643, 653-654 (1986); Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 201-202 (1982); Freund v. Cellofilm Properties, Inc., 87 N.J. 229, 240-241 (1981).
At the conclusion of a jury trial, the jury found that defendants did not wrongfully cause the death of decedent. Based on the evidence, the jury apparently concluded that decedent died from a heart attack which was unrelated to his asbestosis. Thus, the wrongful death cause of action was dismissed. On the survivor's cause of action, however, the jury found that the estate and the widow, Marie Promaulayko, should recover from Asbestos Corporation Limited, Amtorg Trading Corporation (Amtorg) and Leonard J. Buck, Inc. (Buck). Buck and Amtorg were the brokers-distributors which sold Russian asbestos fiber and asbestos products to Ruberoid during decedent's employment. Asbestos Corporation Limited sold non-Russian made asbestos fiber to Ruberoid during decedent's employment.
The jury returned a verdict in favor of the estate for $60,000 and in favor of Marie Promaulayko for $40,000 on her per quod claim. The jury also answered the following special interrogatories:
6. Considering that all of the fault which proximately contributed to John Promaulayko's asbestosis is 100%, what percentage of that total fault is attributable to:

(a) Leonard J. Buck, Inc. 25%
(b) Amtorg Trading Corp. 10%
(c) Asbestos Corp., Ltd. (also known as Johnson's Company Ltd.) 65%
 TOTAL 100%

(Answer Questions 7A and 7B only if you have found fault on the part of both Leonard J. Buck, Inc. and Amtorg Trading Corp.)
7A. Was all (100%) of the asbestos fiber sold by Leonard J. Buck, Inc., which proximately contributed to John Promaulayko's asbestosis sold to Buck by Amtorg Trading Corp.?

*394 Yes X No ____
Based on the jury's conclusion that all of the asbestos which Buck sold to Ruberoid had been obtained by Buck from Amtorg, the trial judge ordered common law indemnification of Buck by Amtorg. In addition to the indemnification, Final Judgment was entered as follows:
Judgement [sic] in favor of Marie Promaulayko, administratrix of the estate of John Promaulayko against the defendants, Leonard J. Buck, Inc. and Asbestos Corporation Ltd. for $60,000.00 plus pre-judgement [sic] interest of $24,580.28.
Judgement [sic] in favor of Marie Promaulayko, administratrix of the estate of John Promaulayko and against the defendant, Amtorg Trading Corporation in the amount of $60,000.00 plus pre-judgement [sic] interest of $18,493.15;
Judgement [sic] in favor of Marie Promaulayko, individually, against the defendants Leonard J. Buck, Inc. and Asbestos Corporation Limited, for $40,000.00 plus pre-judgement [sic] interest in the amount of $16,386.85;
Judgement [sic] in favor of Marie Promaulayko, individually, against the defendant, Amtorg Trading Corporation, in the amount of $40,000.00 plus pre-judgement [sic] interest in the amount of $12,328.77.
Amtorg's motion for judgment notwithstanding the verdict and motions filed by Amtorg and Buck for a remittitur of the per quod damages were denied. Amtorg has appealed from the denial of both motions and Buck cross-appealed from the denial of its motion as well. Buck has abandoned its cross-appeal. Amtorg's brief contains no argument in support of its claim in the notice of appeal that the per quod damages were excessive. That issue is therefore waived or abandoned. Whitfield v. Blackwood, 101 N.J. 500, 504 (1986).
In this appeal, Amtorg contends that Buck was not entitled to indemnification from it because the jury found that although Amtorg sold Buck all the asbestos fiber Buck sold Ruberoid, the jury nonetheless found that Buck was more responsible (25%) for causing John Promaulayko's asbestosis than Amtorg (10%). Amtorg also contends the jury's answer to interrogatory 7A finding that it sold to Buck all of the asbestos fiber Buck sold to Ruberoid is not supported by sufficient credible evidence. We have considered this latter contention in light of the record and find it is clearly without merit. R. 2:11-3(e)(1)(B); Dolson v. Anastasia, 55 N.J. 2, 6-8 (1969). Moreover, *395 the jury's answer to interrogatory 7A is not determinative of the right to indemnification.
The right to common law indemnity amongst distributors held jointly liable in a products liability case poses a difficult issue. It is one of first impression in New Jersey and has at best limited discussion nationwide. Generally, common law indemnification may be available to parties in a chain of distribution of a defective product which harms a consumer or worker. Newmark v. Gimbel's Inc., 54 N.J. 585, 600 (1969). But it is the manufacturer of the defective product that is most often required to indemnify the distributor. Ibid.; Anderson v. Somberg, 158 N.J. Super. 384, 396-397 (App.Div.), certif. den. 77 N.J. 509 (1978); Restatement, Torts 2d, § 886B, comment on clauses (d) and (f) (1977).
Ordinarily, a party who is at fault may not obtain indemnification for its own wrongdoing. Ramos v. Browning Ferris Industries, 103 N.J. 177, 190 (1986); Anderson v. Somberg, 158 N.J. Super. 384, 396-397 (App.Div. 1978). One who is vicariously liable and seeks indemnification must be without fault. Cartel Capital Corp. v. Fireco of N.J., 81 N.J. 548, 566 (1980). In Cartel our Supreme Court observed:
It is settled that indemnity may not ordinarily be obtained by a party who has been at fault. The general rule is set forth in Restatement, Restitution § 96 at 418 (1937):
A person who, without personal fault, has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability. [emphasis supplied]
This principle has been accepted in New Jersey. See Adler's Quality Bakery, Inc. v. Gaseteria, 32 N.J. 55, 79-80 (1960); Daily v. Somberg, 28 N.J. [372] at 385; Schramm v. Arsenal Esso Station, 124 N.J. Super. 135, 138 (App.Div. 1973), aff'd o.b. 63 N.J. 593 (1973). It would be inequitable to permit an active wrongdoer in the absence of a contractual understanding between the parties to obtain indemnity from another wrongdoer and thus escape any responsibility. We see no reason not to follow the general rule.
While a determination of whether a product was defective in a strict liability case is product oriented rather than conduct-oriented, a determination of common law indemnification among *396 distributors of a product is conduct oriented. Our research reveals one case that contains some discussion that is relevant to the issue presented here. In Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80 (1960), cited with approval in Cartel Capital Corp., supra, 81 N.J. at 566, our Supreme Court relied on Builders Supply Co. v. McCabe, 366 Pa. 322, 77 A.2d 368, 370-371 (Sup.Ct. 1951), where that court said:
The right of indemnity rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of comparative negligence, * * *. It depends on a difference in the character or kind of wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person * * *.
* * * [T]he important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible. 77 A.2d, at pages 370, 371.
The trial court's order requiring Amtorg to indemnify Buck is not based on any primary fault of Amtorg. Instead, it is based on Amtorg's proximity to the manufacturer. The jury's finding that Amtorg sold to Buck all of the asbestos fiber Buck sold Ruberoid placed Amtorg closer to the manufacturer in the chain of distribution than was Buck. Both Amtorg and Buck, however, were blameless in terms of conduct that created the defect in the product. The fact that Amtorg supplied Buck with all of the asbestos Buck distributed to Ruberoid does not change the kind or character of Amtorg's liability from secondary to primary. Here, it is clear that the manufacturer, a Russian Company, created the defect by not placing a warning on the product. Common law indemnification is based on equitable principles designed to further the ends of justice by allowing a party whose liability is merely constructive, technical, imputed or vicarious to be indemnified by the party who *397 caused the defect. A retailer or distributor is permitted to be indemnified by the manufacturer because the manufacturer[2] created the defect and the distributor or retailer is generally blameless.
The purpose of indemnification is restitution to prevent an active wrongdoer from being unjustly enriched by having another party discharge the obligation of the active wrongdoer. See Restatement, Restitution, § 1, comments a and b (1936). "The unexpressed premise has been that indemnity should be granted in any factual situation in which, as between the parties themselves, it is just and fair that the indemnitor should bear the total responsibility, rather than to leave it on the indemnitee or to divide it proportionately between the parties by contribution." Restatement, Torts 2d, § 886B, comment on subsection (1) at 346 (1977). Indemnity provides flexibility in securing a fair apportionment of loss among tortfeasors in widely varying circumstances.
Where, as here, the distributors' liability is based upon a common failure to detect the defect in the product and this failure merely continued the defect created by the manufacturer, we perceive of no valid reason to shift the liability of one distributor to another distributor through common law indemnification. Because Buck and Amtorg were both without personal fault, indemnification would create, rather than prevent, unjust enrichment. A distributor or retailer held responsible based solely on principles of vicarious liability may not therefore be indemnified by another distributor or retailer whose fault is also vicarious in nature. In such circumstances, both are blameless distributors whose liability to the injured consumer *398 is predicated on the manufacturer's defect. Cf. Anderson v. Somberg, supra, 158 N.J. Super. at 398-399. Consequently, we hold that common law indemnification was improperly allowed and is therefore reversed.[3]
Some may perceive that the rule announced today is harsh. But the apparent harshness can be mitigated by a proper application of existing law not advanced by Buck or Amtorg in this appeal. By the verdict of the jury, Asbestos Corporation Limited, Buck and Amtorg were found to share the responsibility for causing decedent's asbestosis. Yet the trial judge entered judgment, apparently without objection from counsel, requiring each of the three defendants to pay the entire $100,000 to the estate and the widow, thus ignoring the jury's percentage verdict.
The Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., made applicable to products liability cases by Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 162-164 (1979) and Cartel Capital Corp., supra, 81 N.J. at 563-564, required the judge to give credence to the jury's percentages. N.J.S.A. *399 2A:15-5.2c required the judge to "mold the judgment from the finding of fact made by the trier of fact." This means that the judgment should have been molded to require Asbestos Corporation to pay 65%, Buck to pay 25% and Amtorg to pay 10% of the total $100,000 verdict. By virtue of N.J.S.A. 2A:15-5.3, the estate and the widow "may recover the full amount of the molded verdict from any party against whom such recovering party is not barred from recovery." If Buck or Amtorg is required to pay more than its percentage share of the molded judgment, it "may seek contribution from the other joint tortfeasors." Ibid. Cartel Capital Corp. teaches that Buck and Amtorg are joint tortfeasors as to all of the Russian asbestos sold to Ruberoid by Buck. Thus, both are subject to the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1, 2 and 3. Cartel, 81 N.J. at 567. Both Buck and Amtorg filed cross-claims for contribution pursuant to N.J.S.A. 2A:53A-1 et seq.
We recognize that computing Buck's potential contribution may appear to be made more difficult by the jury's determination that all of the asbestos Buck shipped to Ruberoid came from Amtorg and yet the jury found Buck more responsible than Amtorg.[4] The trial judge nonetheless should have applied the Comparative Negligence Act and the Joint Tortfeasors Contribution Law rather than principles of common law indemnification in molding the verdict. Any attempt, however, to order contribution would be premature before one joint tortfeasor "pays such judgment in whole or in part." N.J.S.A. 2A:53A-3. After one joint tortfeasor has paid the entire judgment or any part thereof, such joint tortfeasor "shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata *400 share...." Ibid. The pro rata share of Buck or Amtorg for contribution is identical to its percentage of fault as determined by the jury. Cartel Capital Corp., supra, 81 N.J. at 569; Tefft v. Tefft, 192 N.J. Super. 561, 566 (App.Div. 1983). Consequently, we do not perceive that the preclusion of common law indemnification is too harsh.
The order requiring Amtorg to indemnify Buck is reversed.
NOTES
[1] Leonard J. Buck, Inc. did not seek and the trial judge did not consider on the record any statutory indemnification based on N.J.S.A. 12A:2-314(2)(c). We express no opinion concerning the applicability of that statute to this case. We note, however, that such a claim was most likely time barred.
[2] Newmark v. Gimbel's Inc., supra, 54 N.J. at 601 acknowledges the existence of problems which exist in international trade and the service of process on foreign corporations, but progress has been made to minimize the problems through such efforts as the United Nations Convention on Contracts for the International Sale of Goods. See Griffin & Calabrese, "The New Rules for International Contracts," ABA Journal, March 1, 1988, p. 62.
[3] The principle employed here is reasonably easy to explain. If we assume a simple chain of distribution from manufacturer to wholesaler to retailer to consumer, and if the manufacturer who would be responsible to indemnify both the retailer and wholesaler cannot be found or is financially irresponsible, we must determine the respective responsibilities of the wholesaler and retailer. There are only three possible configurations: The first configuration would be if we apply the principle of common law indemnification, the retailer could obtain indemnification from the wholesaler and the wholesaler would pay the entire judgment. We have rejected that hypothosis here. The second configuration would be for the retailer alone to bear responsibility. We also reject this proposition since we have posited that all parties in the chain of distribution may be vicariously liable for distributing the defective product which injured the consumer. The third configuration which we have here accepted, is that the wholesaler and retailer both may be responsible and therefore subject to the application of the principles of comparative responsibility under the Comparative Negligence Act and the rights afforded them to receive contribution under the Joint Tortfeasors Contribution Law. N.J.S.A. 2A:15-5.1 et seq.; N.J.S.A. 2A:53A-1 et seq. The third configuration represents the present case.
[4] The jury's finding that Buck was more at fault than Amtorg and yet found that Amtorg supplied all of the asbestos Buck sold to Ruberoid indicates that the verdict may be inconsistent. That issue has not, however, been raised in this appeal. We decline to address it. See Whitfield v. Blackwood, supra, 101 N.J. at 504-505.