MARIE PROMAULAYKO, AS ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF JOHN PROMAULAYKO, PLAINTIFF, v. JOHNS MANVILLE SALES CORPORATION, JOHNS MANVILLE SALES CORPORATION, SUCCESSOR TO AND IN LIEU OF JOHNS MANVILLE PRODUCTS CORPORATION; JOHNS MANVILLE CANADA, INC., FORMERLY KNOWN AS CANADIAN JOHNS MANVILLE CO., LTD., CANADIAN JOHNS MANVILLE AMIANTE LTD., FORMERLY CANADIAN JOHNS MANVILLE ASBESTOS LTD.; JOHNS MANVILLE CORPORATION; JOHN DOE TRADE ASSOCIATION; JOHN DOE CORPORATION; ASBESTOS CORPORATION LTD.; YORK INDUSTRIES; CELOTEX CORP.; CAPE ASBESTOS LTD.; NORTH AMERICAN ASBESTOS CORP.; NATIONAL GYPSUM; VERMONT ASBESTOS GROUP; A.N. DERINGER INC.; CARY CANADIAN MINES; KENNETH SMITH, M.D.; AND THE ASSOCIATED ORE AND METAL CORPORATION LTD., DEFENDANTS, v. LEONARD J. BUCK, INC., DEFENDANT, CROSS–CLAIMANT–RESPONDENT, AND AMTORG TRADING CORPORATION, DEFENDANT, CROSS–CLAIMANT–APPELLANT.

Argued February 28, 1989—Decided August 8, 1989.

*John C. Kennedy* argued the cause for appellant (*O'Donnell, Kennedy, Vespole & Piechta,* attorneys; *Francis J. Panzini–Romeo,* on the brief).

*Arthur D. Bromberg* argued the cause for respondent (*Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade,* attorneys; *Richard D. Picini,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

The sole issue on this appeal is whether an intermediate distributor in a chain of distribution should indemnify the ultimate distributor when both are strictly liable in tort to the injured plaintiff. The Law Division granted indemnification to the ultimate distributor, but the Appellate Division reversed, 224 *N.J.Super.* 391 (1988). We granted certification, 113 *N.J.* 338 (1988), and now reverse the judgment of the Appellate Division.

–I–

The underlying facts are that the decedent, John Promaulayko (Promaulayko), contracted asbestosis while working for Ruberoid Corporation from 1934 to 1978 at its South Bound Brook plant. During that period, Ruberoid purchased asbestos from Leonard J. Buck, Inc. (Buck), Asbestos Corporation Limited

(Asbestos), and various other suppliers. Included in the asbestos sold by Buck to Ruberoid's South Bound Brook plant was 96.5 tons of Soviet asbestos, which Buck purchased from Amtorg Trading Corporation (Amtorg). The asbestos was packaged in 100–pound bags that did not warn of the dangers of asbestosis. Apparently neither Amtorg nor Buck ever took possession of the bags, which were shipped from the Soviet Union to the United States where Ruberoid took possession of them.

The jury determined in answer to a special interrogatory that Amtorg had supplied all of the Soviet asbestos that caused Promaulayko's injuries. After Promaulayko's death, his wife, plaintiff, Marie Promaulayko, instituted wrongful death, *N.J. S.A.* 2A:31–1 to –6, and survivor's, *N.J.S.A.* 2A:15–3, actions, naming as defendants, among others, Amtorg, Buck, and Asbestos. Only Buck and Amtorg are involved in the present appeal.

Buck, a corporation of the State of Delaware, is a broker of mineral products, whose brokerage of asbestos at the time of its sales to Ruberoid accounted for less than one percent of its business. Amtorg is a New York corporation founded in 1924 to promote trade between the United States and the Soviet Union. Its employees are Soviet citizens, the majority of whom remain in the United States for three or four years before returning to jobs in the Soviet Ministry of Foreign Trade. By 1930, Amtorg served as broker for eighty-six percent of the Soviet products entering the United States. At present, Amtorg serves as a direct agent for Soviet business interests and channels the majority of Soviet trade to the United States.

At the conclusion of the trial, the jury dismissed plaintiff's wrongful-death claim, apparently because Promaulayko died from a heart attack unrelated to his asbestosis. The jury awarded $60,000 to Promaulayko's estate on the survivor's action, and $40,000 to plaintiff on her *per quod* claim. In

reaching that result, the jury provided the following answers to special interrogatories:

6. Considering that all of the fault that proximately contributed to John Promaulayko's asbestosis is 100%, what percentage of that total fault is attributable to:

| | |
|---|---|
| (a) Leonard J. Buck, Inc. | 25% |
| (b) Amtorg Trading Corp. | 10% |
| (c) Asbestos Corp. Ltd. (also known as Johnson's Company Ltd.) | 65% |
| TOTAL | 100% |

7a. Was all (100%) of the asbestos fiber sold by Leonard J. Buck, Inc., which proximately contributed to John Promaulayko's asbestosis sold to Buck by Amtorg Trading Corp.?

Yes X No ___.

Based on the jury's answer that Amtorg had supplied Buck with all of the asbestos that had caused Promaulayko's asbestosis, the trial court granted Buck indemnification from Amtorg. The court rejected Amtorg's argument that Buck was not entitled to indemnification because the jury's answer to interrogatory 6 indicated that Buck was more at fault than Amtorg. Although the court acknowledged the inconsistencies in the answers to interrogatories 6 and 7a, it concluded that if the jury made a mistake, it was in answer to interrogatory 6, which dealt with the difficult issue of the allocation of fault. By contrast, the answer to the simple factual issue posed by interrogatory 7a established that Amtorg had supplied all the Soviet asbestos that Buck sold to Ruberoid's South Bound Brook plant.

The Appellate Division reversed, ruling that one in the position of a retailer, such as Buck, could obtain indemnification only from the manufacturer who produced the defective product and not from an intermediate distributor such as Amtorg. Underlying that determination was the court's conclusion that indemnity is based on the difference between the primary liability of the manufacturer and the secondary liability of

distributors lower in the chain of distribution. The court reasoned that the

> trial court's order requiring Amtorg to indemnify Buck is not based on any primary fault of Amtorg. Instead, it is based on Amtorg's proximity to the manufacturer. The jury's finding that Amtorg sold to Buck all of the asbestos fiber Buck sold Ruberoid placed Amtorg closer to the manufacturer in the chain of distribution than was Buck. Both Amtorg and Buck, however, were blameless in terms of conduct that created the defect in the product. The fact that Amtorg supplied Buck with all of the asbestos Buck distributed to Ruberoid does not change the kind or character of Amtorg's liability from secondary to primary. Here, it is clear that the manufacturer, a Russian Company, created the defect by not placing a warning on the product. Common law indemnification is based on equitable principles designed to further the ends of justice by allowing a party whose liability is merely constructive, technical, imputed or vicarious to be indemnified by the party who caused the defect. A retailer or distributor is permitted to be indemnified by the manufacturer because the manufacturer created the defect and the distributor or retailer is generally blameless.
>
> The purpose of indemnification is restitution to prevent an active wrongdoer from being unjustly enriched by having another party discharge the obligation of the active wrongdoer. * * * Where, as here, the distributors' liability is based upon a common failure to detect the defect in the product and this failure merely continued the defect created by the manufacturer, we perceive of no valid reason to shift the liability of one distributor to another distributor through common law indemnification. Because Buck and Amtorg were both without personal fault, indemnification would create, rather than prevent, unjust enrichment. [224 *N.J.Super.* at 396–97 (footnote omitted).]

The court concluded that the proper method ameliorating its otherwise "harsh" result was to modify the award based on the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3. *Id.* at 398–99. Consequently, it molded the verdict in accordance with the jury's answer to interrogatory 6, the result of which is that Asbestos would pay sixty-five percent; Buck, twenty-five percent; and Amtorg, ten percent of the total $100,000 award. *Id.* at 399–400.

–II–

Two basic principles underlie the development of strict liability in tort. The first principle is the allocation of the risk of loss to the party best able to control it. *Fischer v. Johns–Manville Corp.*, 103 *N.J.* 643, 657 (1986); *Spring Motors Distribs., Inc.*

*v. Ford Motor Co.*, 98 *N.J.* 555, 567–68 (1985); *Feldman v. Lederle Laboratories*, 97 *N.J.* 429, 450 (1984); *O'Brien v. Muskin Corp.*, 94 *N.J.* 169, 181–82 (1983); *Cepeda v. Cumberland Eng'g Co. Inc.*, 76 *N.J.* 152, 174 (1978); *Henningsen v. Bloomfield Motors, Inc.*, 32 *N.J.* 358, 379 (1960). The second is the allocation of the risk to the party best able to distribute it. *Fischer, supra*, 103 *N.J.* at 657; *Spring Motors, supra*, 98 *N.J.* at 567–568; *Kelly v. Gwinnell*, 96 *N.J.* 538, 550, n. 9 (1984); *O'Brien, supra*, 94 *N.J.* at 181–82; *Trentacost v. Brussel*, 82 *N.J.* 214, 226 (1980); *Suter v. San Angelo Foundry & Mach. Co.*, 81 *N.J.* 150, 173–74 (1979); *Monmouth Medical Center v. State*, 80 *N.J.* 299, 312 (1979); *Cepeda, supra*, 76 *N.J.* at 174; *Property Owners Ass'n of N. Bergen v. Township of N. Bergen*, 74 *N.J.* 327, 337 (1977); *Henningsen, supra*, 32 *N.J.* at 379. We have expressly applied those general principles to asbestosis cases. *Beshada v. Johns–Manville Prods. Corp.*, 90 *N.J.* 191, 205–07 (1982). Accordingly, the essence of a *prima facie* case of liability is proof that defendant placed a defective product in the stream of commerce. As a matter of law, the seller is presumed to know of the defect, *Freund v. Cellofilm Properties, Inc.*, 87 *N.J.* 229, 239 (1981), so the injured party need not prove that the manufacturer was negligent or knew of the defect, *Henningsen, supra*, 32 *N.J.* at 372. Even in a failure-to-warn case, the cause is essentially one in strict liability into which negligence creeps to the limited extent of analyzing the reasonableness of the defendant's conduct on the assumption that it knew of the defect. *Fischer, supra*, 103 *N.J.* at 654; *Feldman, supra*, 97 *N.J.* at 450. Although the focus remains on the product, the defendant satisfies its obligation by proving that it "acted in a reasonably prudent manner in marketing the product or in providing the warnings given." *Feldman, supra*, 97 *N.J.* at 451.

In a strict-liability action, liability extends beyond the manufacturer to all entities in the chain of distribution. *Michalko v. Cooke Color & Chem. Co.*, 91 *N.J.* 386, 394 (1982); *American White Cross Laboratories, Inc. v. Continental Ins.*

*Co.*, 202 *N.J.Super.* 372, 379 (App.Div.1985); *Santiago v. E.W. Bliss Div.*, 201 *N.J.Super.* 205, 223 (App.Div.1985). Although a distributor and a retailer may be innocent conduits in the sale of the defective product, they remain liable to the injured party. *American White Cross, supra*, 202 *N.J.Super.* at 379; *Santiago, supra*, 201 *N.J.Super.* at 223. The net result is that the absence of the original manufacturer or producer need not deprive the injured party of a cause of action. W. Prosser, *The Fall of the Citadel*, 50 *Minn.L.Rev.* 791, 816 (1966).

In the absence of an express agreement between them, allocation of the risk of loss between the parties in the chain of distribution is achieved through common-law indemnity, an equitable doctrine that allows a court to shift the cost from one tortfeasor to another. The right to common-law indemnity arises "without agreement, and by operation of law to prevent a result which is regarded as unjust or unsatisfactory." W. Keeton, D. Dobbs, R. Keeton, & D. Owens, *Prosser & Keeton on The Law of Torts* § 51 at 341 (5th ed. 1984) (*Prosser & Keeton*). One branch of common-law indemnity shifts the cost of liability from one who is constructively or vicariously liable to the tortfeasor who is primarily liable. *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 *N.J.* 55, 80 (1960). A corollary to this principle is that one who is primarily at fault may not obtain indemnity from another tortfeasor. *Cartel Capital Corp. v. Fireco of New Jersey*, 81 *N.J.* 548, 566 (1980). Consistent with this principle, actions by retailers against manufacturers have been recognized in this State for twenty years. *Newmark v. Gimbels Inc.*, 54 *N.J.* 585, 600–01 (1969); see *Cartel Capital, supra*, 81 *N.J.* at 565.

In the present case, we consider the application of the principles underlying strict liability in tort to a claim for common-law indemnification by one distributor against a distributor higher in the chain. Here, the claim is not between two parties, one of which is primarily liable and the other liable only secondarily or vicariously. Both Amtorg and Buck are liable to plaintiff because of their relationship to the product as it proceeded

down the chain of distribution. We have not previously considered the issue, and it has received scant attention from commentators and other courts.

The Mississippi Supreme Court, however, has indicated that one distributor may recover from another distributor closer to the source of distribution. In the Mississippi case, the nephew of a soft-drink purchaser recovered from a distributor for personal injuries caused by a bottle that broke when it fell from a defective carton. In affirming the judgment, the court noted that

> [m]ore generally, in the strict liability era, each party from the retail seller on up the chain has a potential right of indemnity (assuming of course that all of the elements of the claim for indemnity are met) against the person or firm who sold the product to him as well as against all others on up the chain to the designer or manufacturer of the product or the component part found unreasonably dangerously defective. [*Coca Cola Bottling Co. Inc. v. Reeves*, 486 *So.*2d 374, 379 n. 4 (1986).]

Similarly, in a Missouri case where a consumer recovered against a retailer for injuries caused by the collapse of a defective crutch, the retailer was awarded indemnification from the manufacturer. *Welkener v. Kirkwood Drug Store Co.*, 734 *S.W.*2d 233 (1987). In approving indemnification against the manufacturer, the Missouri Court of Appeals stated that it "agree[d] with the authorities which hold that a seller lower in the chain of distribution who sells a product without actual or constructive knowledge of a defect and who has no duty to inspect is entitled to indemnity against one higher in the chain, such as the manufacturer." *Id.* at 242; *see K–Mart Corp. v. Chairs, Inc.*, 506 *So.*2d 7 (Fla.Dist.Ct.App.), *rev. denied*, 513 *So.*2d 1060 (1987) (allowing common-law indemnification against distributor and manufacturer of a defective swing set); *cf. Restatement of the Law of Restitution* § 98(b) comment (1936) (as between two innocent parties, one without fault is entitled to indemnification from another who is primarily responsible for injuries caused by the condition of chattels).

In allowing claims for common-law indemnification by one party in the chain of distribution against a party higher up the chain, these courts have proceeded in a manner consistent with the principle of allocating the risk of loss to the party better able to control the risk and to distribute its costs. The approach is consistent also with the principle of focusing on the defective product as it proceeds down the chain of distribution. In general, the effect of requiring the party closest to the original producer to indemnify parties farther down the chain is to shift the risk of loss to the most efficient accident avoider. *See* R. Posner, *Economic Analysis of the Law* 173–74 (1986) (Posner). Passing the cost of the risk up the distributive chain also fulfills, as a general rule, the goal of distributing the risk to the party best able to bear it. *Fischer, supra,* 103 *N.J.* at 657; *Beshada, supra,* 90 *N.J.* at 205–07. The manufacturer to whom the cost is shifted can distribute that cost among all purchasers of its product. Similarly, a wholesale distributor can generally pass the risk among a greater number of potential users than a distributor farther down the chain. When viewed in terms of these economic consequences, the principle of unjust enrichment, on which the Appellate Division relied, 224 *N.J.Super.* at 397, similarly supports the allocation of the risk to the distributor closest to the manufacturer. *See Saint Barnabas Medical Center v. Essex County,* 111 *N.J.* 67, 86–87 (1988) (Pollock, J., concurring); Posner, *supra,* at 122.

Although our analysis has proceeded along the lines of strict liability in tort, our reasoning is consistent with the principles underlying commercial law. Nothing in the Uniform Commercial Code precludes one party in a distributive chain from seeking indemnification from a party higher up the chain for breach of implied warranties of merchantability, *N.J.S.A.* 12A:2–314, or of fitness for a particular purpose, *N.J.S.A.* 12A:2–315. Permitting indemnification from the next party in the distributive chain also is consistent with the former Sales

Act, *N.J.S.A.* 46:30–21, which was in effect at the time of the sale from Amtorg to Buck in 1947. *See Griffin v. James Butler Grocery Co.*, 108 *N.J.L.* 92, 97 (Sup.Ct.1931) (retailer held liable under implied warranty created in section 15 of Sale of Goods Act had action against manufacturer who sold it adulterated peaches); *General Home Improvement Co. v. American Ladder Co., Inc.*, 26 *N.J.Misc.* 24 (Cir.Ct.) (purchaser of a ladder could recover from seller and manufacturer on express and implied warranties when purchaser had to pay workmen's compensation claim to employee who fell when ladder broke), *overruled on other grounds, Henningsen, supra*, 32 *N.J.* at 416 (1947). Other jurisdictions have also allowed recovery on implied warranties that extend from one party to another down the chain of distribution. *See Klein v. Asgrow Seed Co.*, 246 *Cal.App.*2d 87, 54 *Cal.Rptr.* 609 (1966) (tomato grower recovered judgment for breach of warranty against seed grower; indemnification allowed by each party in the chain of distribution against party higher in the chain); *McSpedon v. Kunz*, 271 *N.Y.* 131, 2 *N.E.*2d 513 (1936) (customer developed trichinosis after eating pork chops and recovered judgment against butcher for breach of implied warranty; indemnification allowed for butcher against supplier, and for supplier against packer); *Aldridge Motors v. Alexander*, 217 *N.C.* 750, 9 *S.E.*2d 469 (1940) (retail car dealer successfully sued wholesale car dealer based on implied warranty when consumer obtained damages from retailer); *Hellenbrand v. Bowar*, 16 *Wis.*2d 264, 114 *N.W.*2d 418 (1962) (buyer of feed for lactating sows brought action under express and implied warranty against seller, seller brought implied warranty against his supplier, supplier brought warranty crossclaim against distributor, the manufacturer not involved in action; all judgments against party higher in distributive chain affirmed); *see also N.J.S.A.* 12A:2–607(5)(a) (permits buyer to vouch in its seller when third party brings suit against buyer based on the product).

–III–

In the present case, Amtorg was closer than Buck to the producer of the asbestos in the Soviet Union. As between the two of them, Amtorg is better positioned "to put pressure on" the producer to make the product safe. *See Newmark, supra,* 54 *N.J.* at 600. Here, the defect was the absence of a warning of the dangers of asbestosis when the bags were placed in the stream of commerce. Because of Amtorg's relationship to Soviet commerce in general and to the producer in particular, it is more likely that it, rather than Buck, will be able to persuade the producer to provide an adequate warning. Further, Amtorg is better able to shift the cost of the loss to the asbestos producer and to require that producer to reflect the cost of injury in the price of its product.

Conceivably, a set of facts might arise in which the party at the end of the distributive chain will be a better risk-bearer than a party higher in the chain. As a general rule, however, we expect indemnification to follow the chain of distribution. Finally, we recognize that parties in a distributive chain may contract for a different allocation of the risk of loss. For example, one distributor may expressly agree to disclaim or waive any right of indemnification against a distributor farther up the chain. In the present case, the parties did not make any such agreement, and we are satisfied that Buck is entitled to indemnification from Amtorg, the distributor that was interposed between Buck and the producer of the product.

Amtorg contends that it should not be obliged to indemnify Buck because of the answer to special interrogatory 6, in which the jury found Buck twenty-five per cent at fault and Amtorg only ten per cent at fault for Promaulayko's injuries. The trial court apparently submitted this interrogatory because of the crossclaims for contribution. According to the trial court, the jury's determination did not represent a finding of fault in the negligence sense. Instead, it was a finding of "sterile fault" assigned in a strict-liability case to intermediate parties in a distributive chain. This finding led the trial court to conclude

that the jury's allocation of fault was probably based on the fact that Buck was closer in the chain to Ruberoid. As previously indicated, however, the liability of Buck and Amtorg to plaintiff stems from their relative roles as conduits for the distribution of the defective product. In answer to interrogatory 7, the jury found that Amtorg had supplied to Buck 100% of that product. As between Buck and Amtorg, then, Amtorg should accept the responsibility for Buck's liability to plaintiff. Thus, the jury's finding of fault with respect to a possible claim for contribution does not change Buck's right to indemnification from Amtorg. Nothing in the Joint Tortfeasors Contribution Act, *N.J.S.A.* 2A:53A-1 to -5, or the Comparative Negligence Act, *N.J.S.A.* 2A:15-5.1 to -5.3, would alter that result. *See* L. Frumer & M. Friedman, *Products Liability* § 15.03[4][e] (1989).

Here, the injured party sued two distributors, neither of which altered or even possessed the product as it proceeded from the producer to the ultimate purchaser. In this context, the appropriate vehicle for allocating responsibility between the distributors is indemnification, not contribution. It follows that the trial court should not have asked the jury to determine the various percentages of fault attributable to Buck and Amtorg. The right of the downstream distributor to indemnification from the upstream distributor existed as a matter of law. Consequently, the court should have determined that right following the entry of the jury verdict against defendants.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for the entry of judgment permitting indemnification by Buck against Amtorg.

*For reversal and remandment* —Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed* —None.